IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ROCCO DOMINIC TINOCO,

    Plaintiff,

v.                                                                                               Case No. 19-cv-0712 KG-SCY

UNITED STATES OF AMERICA, *et al,*

    Defendants.

MEMORANDUM OPINION AND ORDER

       This matter is before the Court on Plaintiff Rocco Dominic Tinoco's *Pro Se* Civil Rights Complaint (Doc. 1).  He seeks a mandatory injunction against halfway house officials so that he can conduct daily research at the University of New Mexico (UNM) Law Library.  Having reviewed the matter *sua sponte* under 28 U.S.C. § 1915(e), the Court concludes Plaintiff's claims fail as a matter of law.  Hence, the Court will dismiss the Complaint with prejudice.

I.     Background[1]

       In 2019, Plaintiff resided at the Dismas/Diersen Charities, Inc. residential reentry center (the "Halfway House").  (Doc. 1) at 1-2.  He entered the Halfway House following his release from federal custody.  *Id.*  On July 18, 2019, Plaintiff requested permission to conduct legal research at the UNM Law Library.  *Id.* at 3.  The research pertained to his federal 28 U.S.C. § 2255 proceeding, Civ. No. 19-273, and his state custody case, No. D-619-DM-2018-131.  *Id.*  A week later, Halfway House officials denied Plaintiff's request.  *Id.*  Counselor Pollard and Assistant Director Malone explained that the UNM Law Library "was not a program-required

---

[1] For the purpose of this ruling, the Court assumes the facts in the Complaint (Doc. 1) are true.

pass." *Id.* Plaintiff alleges the decision impaired his ability to prosecute his pending cases. *Id.*

Construed liberally, the Complaint raises an access-to-court claim under the First and Fifth Amendments. Plaintiff names the United States of America; the federal Bureau of Prisons (BOP); the Halfway House; and its president and chief operating officer, Raymond Weis. (Doc. 1) at 1-2. The only requested relief is a mandatory injunction requiring the Halfway House to issue a research pass. *Id.* at 5-6.

The Complaint reveals that Plaintiff did not exhaust administrative remedies and attaches a copy of the grievance policies. *Id.* at 4, 8-9. Plaintiff contends he completed the first two grievance steps, *i.e.,* initiating an informal discussion and filing a written statement. *Id.* at 4. However, he did not file a formal grievance with the BOP and/or the Halfway House corporate offices. *Id.* Plaintiff obtained leave to proceed *in forma pauperis,* and the Complaint is ready for initial review. (Doc. 9).

II.     Standards Governing Initial Review

Section 1915(e) of Title 28 requires the Court to conduct a *sua sponte* review of all *in forma pauperis* complaints. The Court must dismiss any inmate complaint that is frivolous, malicious, or "fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e). The Court also may dismiss a complaint *sua sponte* under Rule 12(b)(6) if "it is patently obvious that the plaintiff could not prevail on the facts alleged, and allowing [plaintiff] an opportunity to amend [the] complaint would be futile." *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991) (quotations omitted). The plaintiff must frame a complaint that contains "sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570

(2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Because Plaintiff is *pro se*, his "pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." *Hall,* 935 F.2d at 1110.  While *pro se* pleadings are judged by the same legal standards as others, the Court can overlook the "failure to cite proper legal authority, … confusion of various legal theories, …, or … unfamiliarity with pleading requirements."  *Id.*  However, it is not the "proper function of the district court to assume the role of advocate for the pro se litigant."  *Id.*

III.    Discussion

The right to access courts implicates the First Amendment, the Fifth Amendment, and the Due Process Clause.  *See Smith v. Maschner*, 899 F.2d 940, 947 (10th Cir. 1990); *Love v. Summit County*, 776 F.2d 908, 912 (10th Cir. 1985) (same).  A detainee must receive "a reasonably adequate opportunity to present claim[s] … to the courts."  *Lewis v. Casey*, 518 U.S. 343, 350 (1996) (quoting *Bounds v. Smith*, 430 U.S. 817, 825 (1977)).  The right to present claims focuses on the "conferral of a capability—the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts."  *Lewis*, 518 U.S. at 356.  The right does not require authorities to supply resources guaranteeing a detainee's ability "to litigate effectively once in court" or to "conduct generalized research."  *Id.* at 354, 360.  In fact, there is no per se "right to a law library or to legal assistance" from government officials, provided the plaintiff has some method of "present[ing] … grievances."  *Id.* at 350, 354.

Beyond demonstrating a lack of access, a plaintiff must also "show [the issues] …

prejudiced him in pursuing litigation." *Treff v. Galetka*, 74 F.3d 191, 194 (10th Cir. 1996). "Conclusory allegations of injury in this respect will not suffice." *Wardell v. Duncan*, 470 F.3d 954 (10th Cir. 2006). *See also Lewis,* 518 U.S. at 351 ("[A]n inmate cannot establish relevant actual injury simply by establishing [the] … legal assistance program is subpar in some theoretical sense."). To succeed on an access-to-court claim, the plaintiff must describe the legal materials he is seeking, clarify how the facility's resources are inadequate for his queries, and explain how his legal claim is nonfrivolous. *See McBride v. Deer*, 240 F.3d 1287 (10th Cir. 2001).

The Complaint here does not explain how the lack of library access hindered Plaintiff's ability to pursue a non-frivolous legal claim. Plaintiff filed his Section 2255 habeas petition before he arrived at the Halfway House. (Doc. 1) in Civ. No. 19-cv-273. The petition is awaiting initial review, and no further action is required at this time. As to the state custody case, Plaintiff only alleges he could not "timely prepare and file meaningful legal papers" or respond to "directives, should the court issue any." (Doc. 1) at 4. This allegation is vague and gives no insight into what research, if any, Plaintiff needed to perform to pursue a non-frivolous claim. The Complaint also fails to indicate whether the Halfway House has internet access or explained why Google - which maintains a free legal database called "Google Scholar" - was inadequate. As one court noted, "the full text of nearly all legal authority … is available via Google Scholar, which is … completely free." *Catz v. Chalker*, 2011 WL 13301955, at *3 (D. Ariz. Apr. 7, 2011), *aff'd*, 512 Fed. App'x 693 (9th Cir. 2013). *See also Phillips v. Bd. of Cty. Commissioners of Tulsa Cty.,* 2019 WL 7340139, at *3 (N.D. Okla. Dec. 30, 2019) (dismissing court-access claim where Google Scholar was available).

4

For these reasons, the Complaint fails to state a cognizable access-to-courts claim. The Court will dismiss the Complaint pursuant to 28 U.S.C. § 1915(e).

IV.     The Court Declines to *Sua Sponte* Invite an Amendment

*Pro se* plaintiffs should ordinarily be given an opportunity to "remedy defects potentially attributable to their ignorance of federal law." *Reynoldson v. Shillinger,* 907 F.2d 124, 126 (10th Cir. 1990). However, courts need not invite an amendment when any amended claims would also be subject to immediate dismissal under Fed. R. Civ. P. 12(b)(6) or 28 U.S.C. § 1915. *See Bradley v. Val-Mejias*, 379 F.3d 892, 901 (10th Cir. 2004). While Plaintiff may be able to amplify his court-access claim with more facts, there are two fatal defects barring the requested relief.

First, it is clear from the face of the Complaint that Plaintiff did not exhaust administrative remedies before filing suit, as required by the Prison Litigation Reform Act (PLRA). *See* 42 U.S.C. § 1997e(a); *Jones v. Bock*, 549 U.S. 199, 211 (2007) ("[E]xhaustion is mandatory under the PLRA and ... unexhausted claims cannot be brought in court").[2] Plaintiff provides a detailed account of which grievance steps he completed but notes he did not complete step three. (Doc. 1) at 4. That step requires a formal grievance with the BOP or Halfway House corporate office. (Doc. 1) at 4. Plaintiff explains he did not complete the third step "given the clearly established law" in his favor and "the imminent irreparable harm" he would suffer by completing "the lengthy process." (Doc. 1) at 4-5. In other words, he believed he had a strong claim and did not want to wait for an answer from the BOP. The Complaint gives no indication Plaintiff "was

---

[2] The PLRA applies where, as here, Plaintiff was detained in a Halfway House at the time of filing. *See Jackson v. Johnson,* 475 F.3d 261, 267 (5th Cir. 2007); *Witzke v. Femal*, 376 F.3d 744, 752 (7th Cir. 2004); *Hage v. ICCS Halfway House*, 2006 WL 2583093, *1 (D.Colo. 2006).

5

thwarted in his attempts to" exhaust, which is the only way to overcome the requirement in civil rights cases. *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *see also Ross v. Blake,* 136 S. Ct. 1850, 1856-57 (2016) ("[A] court may not excuse a failure to exhaust" where remedies were available, "even to take [special] circumstances into account."). Hence, amendment would be futile because the claims are barred by the PLRA.

Alternatively, even if Plaintiff exhausted his claims, the requested relief (a mandatory injunction) is now moot. On October 3, 2019, Plaintiff filed a notice indicating he moved from the Halfway House, located at 2331 Menual Blvd. NE in Albuquerque, New Mexico, to a residential address on the west side of Albuquerque. (Doc. 1) at 2; *see also* (Doc. 8) at 1. Where claims for "injunctive relief relate solely to the conditions of confinement at the penal institution at which the prisoner is no longer incarcerated, courts … are unable to provide the prisoner with effective relief." *Jordan v. Sosa*, 654 F.3d 1012, 1027 (10th Cir. 2011). This is because a "prisoner's transfer … signals the end of the alleged deprivation of his constitutional rights," and an injunction "would have no effect on the defendants' behavior towards him." *Id.* (quotations omitted). The only exception is where "a prisoner brings a lawsuit challenging policies that apply in a generally uniform fashion throughout a prison system," and the lawsuit is against the "director of the prison system or the prison system itself." *Id.* at 1028.

Although Plaintiff was released from a halfway house, rather than a prison, the same principles apply. An injunction requiring Defendants to issue a research pass would have no impact in this case. Plaintiff no longer lives at the Halfway House and is presumably free to visit the law library. Further, the exception to mootness does not apply here. Plaintiff's claims challenge a specific decision by Halfway House officials, rather than a nationwide BOP policy. *See, e.g.,* (Doc.

6

1) at 3 (alleging the issuance of a research pass "would be subject to the discretion of the [Halfway House] Director").  Because the Complaint only seeks injunctive relief, and Plaintiff does not seek damages, the case is moot.  The Court will dismiss the Complaint with prejudice.  For clarification, such ruling only applies to the requested relief in the Complaint (*i.e.,* a mandatory injunction).[3]

IT IS ORDERED:

1. Plaintiff's Civil Rights Complaint (Doc. 1) is dismissed with prejudice pursuant to 28 U.S.C. § 1915(e).

2. The Court will enter a separate judgment consistent the civil case.

_____
UNITED STATES DISTRICT JUDGE

---

[3] The Court declines to *sua sponte* invite an amendment seeking damages, rather than injunctive relief, now that Plaintiff has been released.  The election of remedies is based on an individual plaintiff's goals and preferences.  Declining to request damages is a choice, not a "defect potentially attributable to the[] ignorance of federal law."  *Reynoldson v. Shillinger,* 907 F.2d 124, 126 (10th Cir. 1990) (setting out standard for *sua sponte* leave to amend).  If Plaintiff suffered damages based on the access to courts issues, he can file a separate civil rights action addressing that issue.